

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| BUXTON COMPANY, | § | |
| Plaintiff, | § § § | |
| vs. | § | CIVIL ACTION NO. 4:12-CV-00649-A |
| VISA U.S.A. INC., | § § § | |
| Defendant. | § § | |

### PLAINTIFF'S FIRST AMENDED COMPLAINT

Buxton Company ("Buxton") files this, Plaintiff's First Amended Complaint against VISA U.S.A. Inc. ("VISA"), and respectfully shows the Court as follows:

### I.
### PARTIES

1. Plaintiff, Buxton, is a Texas corporation with its principal place of business in Tarrant County, Texas.

2. Defendant, VISA, is a Delaware corporation with a principal place of business located at 123 Mission Street, 3rd Floor, San Francisco, CA 94105. VISA has been served with process and has appeared and answered in this action.

### II.
### JURISDICTION AND VENUE

3. Defendant removed this case pursuant to 28 U.S.C. § 1441(a) and (b) on the basis that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is a suit between citizens of different states in which the amount in controversy, exclusive of interest and costs, exceeds $75,000.00.

4. The Court has personal jurisdiction over VISA because it continuously and systematically conducts business in this state and the acts complained of herein occurred in this

state. As such, VISA has purposefully availed itself of the laws of this state, subjecting it to jurisdiction in this proceeding. Finally, this Court has personal jurisdiction over VISA because it has generally appeared in this action.

5. Venue of this action is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

### III.
### FACTUAL BACKGROUND

6. Buxton is a Fort Worth-based company and industry leader in customer analytics, providing value-added services and strategic decision-making solutions for retail site selection and targeted marketing to major retailers, cities, economic development groups and healthcare organizations throughout the United States. Founded in 1994, Buxton pioneered the use of demographics, psychographics, drive-time analysis, and lifestyle characteristics to provide value-added services to enterprise serving customers, both public and private.

7. VISA is one of the world's largest credit card processing companies, handling as many as 20,000 credit card transactions per second. As a byproduct of its credit card processing services, VISA accumulates a substantial amount of consumer spending data.

8. In November 2010, VISA contacted Buxton in Fort Worth, Texas, to discuss ways in which VISA's consumer spending data could be used with customer analytics products marketed by Buxton. VISA, which has not historically provided customer analytics products to third parties, asked Buxton to analyze the data captured by VISA, assess its value, brainstorm on potential products, and generally work with VISA towards a Buxton product based on VISA's data.

9. On December 15, 2010, Kevin Akerman of VISA traveled to Buxton's Fort Worth offices to further discuss the potential opportunity between the companies.

10. Following VISA's initial inquiry and subsequent Fort Worth visit, VISA and Buxton worked extensively together to develop Buxton's products, with VISA supplying its data sets and Buxton providing its customer analytics expertise. Based on VISA's stated commitment to provide its data for use with any potential products identified by Buxton, Buxton provided VISA with considerable propriety information regarding Buxton's analytics methodologies, existing products, and customers.

11. As a result of their efforts, the parties identified and evaluated at least eight data solutions: (1) retail matching nights and weekends, (2) retail matching during the day, (3) economic impact studies, (4) trade area definition using Zip-pluis-4 sales and/or drive-time dollar decay trade area summaries, (5) business location point data, (6) business location sales estimates, (7) co-tenant analysis, and (8) merchant categories on-line vs. off-line. Joint discussions around methodology, difficulty and value ultimately led to at least three Buxton products VISA's data could support: Tourism Reports, Customer Spend Reports, and Market Share Reports. As a result of Buxton's consultation and expertise, the parties decided to utilize VISA's Zip-plus-4 data to support these Buxton products. The Zip-plus-4 level of data is significant because it traces spending patterns to within a very targeted 4 to 15 household area while still maintaining the confidentiality of the consumer transaction. This is far more particular than the industry standard which utilizes a higher level of geography defined as a "census block group," consisting of 250 to 500 households on average.

12. After more than a year of working to develop these products, in April 2012, Buxton, using VISA's data, successfully delivered its first test product – Tourism Reports – to Palm Springs, California. The Tourism Reports show the travel patterns of consumers who spend in a specific area. The reports were compiled by Buxton in Fort Worth using data received from VISA and were then delivered by Buxton to the City of Palm Springs.

13.     Following the success of the test product, VISA told Buxton that it desired to move forward with the new Buxton products, and represented and committed to Buxton that it would provide its data to Buxton going forward. VISA urged Buxton to immediately begin marketing the new products, which Buxton did. Indeed, Buxton provided the details of its marketing campaign directly to Kevin Akerman at VISA prior to taking the campaign public.

14.     In reliance on VISA's representations and agreements to provide the data, Buxton sent out marketing materials to over 20,000 existing and potential customers stating that Buxton could now provide Tourism Analytics Solutions (which would be based in part on VISA's data) to its customers.

15.     Buxton formally launched its new products containing VISA's data in April 2012. VISA was aware of, and encouraged, this product launch.

16.     At the ICSC Trade Show in Las Vegas in May 2012, Buxton continued marketing these new products, and at that trade show alone identified over $1.7 million in sales. Following the show, VISA asked Buxton for a list of the customers identified at ICSC so that VISA "could make sure the customers were in VISA's credit card processing system." Buxton complied.

17.     Shortly after the trade show, Buxton contracted with four customers to provide the new Buxton products: Fogo de Chao, California Pizza Kitchen, Sprouts, and Pollo Campero; and was in discussions with a number of other companies seriously interested in these products. VISA was aware of and encouraged these transactions, even providing Buxton with the form authorizations necessary for the exchange of the VISA data concerning these new, contracted customers.

18.     Throughout the course of the nearly two-year development of these products, Buxton and VISA worked to hone a mutually-beneficial pricing structure under which VISA agreed to provide its data to Buxton for incorporation into Buxton's new products. Although the

parties had already reached a definitive agreement with respect to VISA's commitment to provide the data and pricing, on June 7, 2012, VISA requested that Buxton sign VISA's "standard" "overarching data agreement" known as the Master Services Agreement ("MSA"), which the parties began negotiating. As the deadline for Buxton to deliver the new products to Fogo de Chao and the other new customers rapidly approached, Buxton informed VISA of the pressing need to obtain the data necessary to complete the projects under contract. VISA assured Buxton that the data was "ready and waiting to e-mail" to Buxton as soon as the MSA was signed. On August 13, 2012, VISA emailed the latest version of the MSA to Buxton, stating "Here you go. Sign it and we will email you the Fogo data asap."

19. Feeling immense pressure to obtain the promised VISA data so it could comply with its client contracts, Buxton signed the MSA and returned it to VISA. Buxton, however, never received a signed copy of the MSA back from VISA, nor did it receive the "Fogo data," or any other data, that VISA promised.

20. As a result of VISA's unexplained actions, Buxton was unable to fully perform under binding customer contracts and unable to sell these new products to desirous customers and potential customers, causing it a variety of damages, including direct and indirect monetary damages, loss of goodwill, and other damage to its customer relationships.

21. Now, upon information and belief, Buxton believes that VISA induced Buxton into the aforementioned business relationship so that VISA could learn Buxton's products and processes and then take its own analytics product to market, without Buxton.

22. VISA has caused, and is liable to Buxton for, substantial money damages.

23. All conditions precedent to filing suit have been satisfied.

# IV.
# CAUSES OF ACTION

A. **BREACH OF CONTRACT.**

24. Buxton incorporates paragraphs 1-23 above by reference.

25. VISA is liable to Buxton for breach of contract.

26. Buxton and VISA had a valid enforceable agreement, pursuant to which VISA agreed to provide its data for use in the Buxton products at an agreed upon price.

27. Buxton performed under the agreement or was excused from performing. VISA breached its agreement with Buxton by failing to provide its data to Buxton.

28. As a result, Buxton has suffered actual and special damages for which VISA is liable. Pursuant to Section 38.001 of the TEXAS CIVIL PRACTICE & REMEDIES CODE, VISA is also liable to Buxton for its reasonable and necessary attorneys' fees.

B. **PROMISSORY ESTOPPEL.**

29. Buxton incorporates paragraphs 1-23 by reference.

30. In the alternative to breach of contract, VISA is liable to Buxton for promissory estoppel.

31. As set forth herein, VISA made promises to Buxton regarding its commitment to provide the VISA data for use in Buxton's products. In particular, VISA promised to provide its data to Buxton for use in the new Buxton products, and Kevin Akerman of VISA represented and promised to Buxton that he had "complete freedom to develop the product line and select the partners" on behalf of VISA so that he didn't "have to go through layers of sign offs...." As Buxton marketed the new products and identified specific customers who desired to purchase the new products, VISA reiterated its promise to provide the data, both before and after sales contracts between Buxton and its customers were signed.

32. Buxton reasonably and substantially relied on VISA's promises to its detriment by, among other things, spending almost two years working with VISA on the new products, consulting with VISA on the value and uses for its data, revealing to VISA Buxton's own analytics products and processes, marking the new products to over 20,000 customers, marketing the new products at the Las Vegas trade show, and entering into contracts with specific customers.

33. Buxton's reliance was foreseeable by VISA, as VISA encouraged Buxton's commercial marketing of the products containing VISA's data and was aware of the contracts Buxton entered into with its customers requiring VISA's data.

34. As a result of VISA's promises, Buxton has suffered money damages, and injustice can only be avoided by enforcing VISA's promises against it. VISA is therefore liable to Buxton for damages and attorneys' fees.

C. **TORTIOUS INTERFERENCE WITH EXISTING CONTRACTS.**

35. Buxton incorporates paragraphs 1-23 above by reference.

36. VISA is liable to Buxton for tortious interference with existing contracts.

37. Acting with VISA's approval and encouragement, Buxton marketed its products incorporating VISA's data to over 20,000 existing and potential customers, entering into valid and enforceable contracts with Fogo de Chao, California Pizza Kitchen, Sprouts, and Pollo Campero. VISA was aware of and encouraged these transactions, even providing Buxton with the form authorizations necessary for the exchange of the VISA data concerning these new, contracted customers. VISA was similarly aware that performance under these contracts required that VISA deliver its data to Buxton for incorporation into the product.

38. VISA willfully and intentionally interfered with the contracts between Buxton and Fogo de Chao, California Pizza Kitchen, Sprouts, and Pollo Campero, by refusing to provide Buxton the data necessary to fully perform under these contracts.

39. As a result of VISA's tortious interference with Buxton's existing contracts, Buxton has suffered damages, including direct and indirect monetary damages and loss of goodwill, for which VISA is liable. Because VISA tortiously interfered with Buxton's contracts, VISA is also liable to Buxton for exemplary damages.

D. **TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS.**

40. Buxton incorporates paragraphs 1-23 above by reference.

41. VISA is liable to Buxton for tortious interference with prospective business relations.

42. Acting with VISA's approval and encouragement, Buxton marketed its products incorporating VISA's data to over 20,000 existing and potential customers. Buxton was in discussions with a number of existing and potential customers regarding the sale of these products, and there was a more than reasonable probability that Buxton would have entered into business relationships with these existing and potential customers. VISA intentionally interfered with these prospective relations by fraudulently representing to Buxton that VISA intended to partner with Buxton and would provide VISA's data to Buxton to effectuate these perspective business relationships when VISA had no intent to do so. VISA's conduct was independently tortious and unlawful.

43. As a result of VISA's tortious interference with Buxton's prospective business relations, Buxton has suffered damages, including direct and indirect monetary damages and loss of goodwill, for which VISA is liable. Because VISA tortiously interfered with Buxton's prospective relations, VISA is also liable to Buxton for exemplary damages.

E.  **FRAUD.**

44.  Buxton incorporates paragraphs 1-23 above by reference.

45.  VISA is liable to Buxton for fraud.

46.  On November 9, 2010, Kevin Akerman, acting on behalf of VISA, contacted Buxton's Chief Innovations Officer, Todd Walls, to propose Buxton partnering with VISA to develop Buxton products incorporating VISA's data. On December 15, 2010, at a meeting at Buxton's Fort Worth headquarters, Kevin Akerman represented to Buxton that VISA intended to partner with Buxton to create these products and that he "look[ed] forward to working with Buxton." Kevin Akerman further represented that he had "complete freedom to develop the product line and select the partners" on behalf of VISA so that he didn't "have to go through layers of sign offs...." Between the December 15, 2010 meeting and August 2012, VISA, acting through Kevin Akerman and other VISA employees, made constant and continual representations to Buxton that VISA (1) intended to partner with Buxton to create Buxton products utilizing VISA's data and (2) would provide VISA's data to Buxton for use in these products. On August 13, 2012, after Buxton had entered into contracts with its customers requiring the imminent delivery of its products incorporating VISA's data, Kevin Akerman further represented that if Buxton would sign the MSA, VISA would "email the Fogo data asap."

47.  VISA's representations were material, and were false, as VISA never intended to partner with Buxton to create salable Buxton products incorporating VISA's data and never delivered and/or intended to deliver the data or otherwise perform under the parties' agreement. When VISA made these representations, it either knew the representations were false or made them recklessly, as a positive assertion, and without knowledge of their truth, because upon information and belief, VISA never intended to perform under its agreement with Buxton, but instead used Buxton to learn its analytics products and processes so that VISA could use this

confidential information for its own commercial gain by creating and marketing its own analytics products.

48. VISA made the prolonged and continual representations that it would partner with Buxton to create Buxton products utilizing VISA's data and provide Buxton VISA's data with the intent that Buxton would rely on these representations, which Buxton did. Indeed, in reliance on VISA's representations, Buxton analyzed and consulted with VISA regarding VISA's data and revealed to VISA Buxton's own analytics products, processes, and customer lists. With VISA's approval and encouragement, Buxton marketed the products incorporating VISA's data to many of its customers and prospective customers, entering into binding customer contracts which now cannot be fully performed.

49. As a result of VISA's fraud, Buxton has suffered damages, including direct and indirect monetary damages and loss of goodwill, for which VISA is liable. Because VISA committed fraud, VISA is also liable to Buxton for exemplary damages pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE §41.003(a).

### F. NEGLIGENT MISREPRESENTATION.

50. Buxton incorporates paragraphs 1-23 by reference.

51. VISA is liable to Buxton for negligent misrepresentation.

52. On November 9, 2010, Kevin Akerman, acting on behalf of VISA, contacted Buxton's Chief Innovations Officer, Todd Walls, to propose Buxton partnering with VISA to develop Buxton products incorporating VISA's data. On December 15, 2010, at a meeting at Buxton's Fort Worth headquarters, Kevin Akerman represented to Buxton that VISA intended to partner with Buxton to create these products and that he "look[ed] forward to working with Buxton." Kevin Akerman further represented that he had "complete freedom to develop the product line and select the partners" on behalf of VISA so that he didn't "have to go through

layers of sign offs...." Between the December 15, 2010 meeting and August 2012, VISA, acting through Kevin Akerman and other VISA employees, made constant and continual representations to Buxton that VISA (1) intended to partner with Buxton to create Buxton products utilizing VISA's data and (2) would provide VISA's data to Buxton for use in these products. On August 13, 2012, after Buxton had entered into contracts with its customers requiring the imminent delivery of its products incorporating VISA's data, Kevin Akerman further represented that if Buxton would sign the MSA, VISA would "email the Fogo data asap."

53. VISA's representations, supplied for the guidance of Buxton, were false, as VISA did not intend to partner with Buxton to create salable Buxton products incorporating VISA's data and did not intend to deliver the data or otherwise perform under the parties' agreement. Moreover, Kevin Akerman did not have complete freedom to develop the product line and select the partners on behalf of VISA, as he represented to Buxton. VISA did not exercise reasonable care or competence in obtaining or communicating its representations and the information to Buxton. Buxton justifiably relied on VISA's representations, and indeed, in reliance on these representations, and with VISA's approval and encouragement, Buxton marketed the products incorporating VISA's data to many of its customers and prospective customers and entered into binding customer contracts which now cannot be fully performed.

54. VISA's negligent misrepresentations have proximately caused Buxton direct and special damages, including loss of goodwill, for which VISA is liable. In addition, VISA is liable to Buxton for exemplary damages pursuant to TEXAS CIVIL PRACTICE AND REMEDIES CODE §41.003(a).

## V.
## JURY DEMAND

55. Buxton respectfully requests a trial by jury on all issues so triable.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, Buxton respectfully requests that the Court find in favor of Buxton on all of its claims against VISA, and that Buxton be awarded actual damages, special damages, exemplary damages, prejudgment interest, post-judgment interest, attorneys' fees, court costs, and all such other relief to which Buxton is entitled.

Respectfully submitted,

*/s/ Bill Warren*
_____
Marshall M. Searcy, Jr.
State Bar No. 17955500
Bill Warren
State Bar No. 00786331
Chad Arnette
State Bar No. 24014751
Preston R. Mundt
State Bar No. 24058465
KELLY, HART & HALLMAN LLP
201 Main Street, Suite 2500
Ft. Worth, Texas 76102
(817) 332-2500 (phone)
(817) 878-9280 (fax)

**ATTORNEYS FOR BUXTON COMPANY**

## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the foregoing document was forwarded to counsel for Defendant by Certified Mail Return Receipt Requested, as shown below, on this 28th day of September, 2012.

Michael P. Lynn, P.C.
Britta Erin Stanton
Michelle Y. Ku
LYNN TILLOTSON PINKER & COX, L.L.P.
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
**CM, RRR # 7011-3500-0002-5384-9242**

*/s/ Bill Warren*
_____
Bill Warren

JS 44 (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadngs or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
BUXTON COMPANY

## DEFENDANTS
VISA U.S.A. INC.

**(b)** County of Residence of First Listed Plaintiff: Tarrant County, TX
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant: _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

*Stamp: FILED SEP 28 2012 CLERK, U.S. DISTRICT COURT NORTHERN DISTRICT OF TEXAS*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Marshall Searcy, Bill Warren, Chad Arnette, Preston Mundt, Kelly Hart & Hallman LLP, 201 Main Street, Suite 2500, Fort Worth, TX 76102; (817) 332-2300; Fax (817) 878-9280

Attorneys *(If Known)*
Michael Lynn, Britta Stanton, Michelle Ku, Lynn Tillotson Pinker & Cox LLP, 2100 Ross Avenue, Suite 2700, Dalla, TX 75201; (214) 981-3800; Fax (214) 981-3839

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☒ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☒ 370 Other Fraud | ☐ 720 Labor/Mgmt. Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Med. Malpractice | ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | **FEDERAL TAX SUITS** | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate Sentence | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | **Habeas Corpus:** | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 530 General | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee (Prisoner Petition) | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*
- ☐ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district *(specify)*
- ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
28 USC 1332
Brief description of cause:
Claim for breach of contract, promissory estoppel, tortious interference, fraud and negligent misrepresentation.

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ _____
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) PENDING OR CLOSED:
*(See instructions):*
JUDGE _____ DOCKET NUMBER _____

DATE: September 28, 2012
SIGNATURE OF ATTORNEY OF RECORD: *[signature] Bill Warren*

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

United States District Court
Northern District of Texas

## Supplemental Civil Cover Sheet For Cases Removed From State Court

This form must be attached to the Civil Cover Sheet at the time the case is filed in the U.S. District Clerk's Office. Additional sheets may be used as necessary.

1. **State Court Information:**

   Please identify the court from which the case is being removed and specify the number assigned to the case in that court.

   | Court | Case Number |
   |---|---|
   | 348th Judicial District, Tarrant County, TX | 348-261054-12 |

2. **Style of the Case:**

   Please include all Plaintiff(s), Defendant(s), Intervenor(s), Counterclaimant(s), Crossclaimant(s) and Third Party Claimant(s) still remaining in the case and indicate their party type. Also, please list the attorney(s) of record for each party named and include their bar number, firm name, correct mailing address, and phone number (including area code.)

   | Party and Party Type | Attorney(s) |
   |---|---|
   | Buxton Company, Plaintiff | Marshall Searcy, Jr., SBN:17955500; Bill Warren, SBN 00786331; Chad Arnette, SBN 24014751; Preston Mundt, State Bar No. 24058465 KELLY, HART & HALLMAN LLP, 201 Main Street, Suite 2500 Ft. Worth, Texas 76102, (817) 332-2500 (phone); (817) 878-9280 (fax) |
   | Visa U.S.A. Inc., Defendant | Michael Lynn, P.C., SBN 12738500; Britta Stanton, SBN 24036976; Michelle Ku, SBN 24071452 LYNN TILLOTSON PINKER & COX, L.L.P., 2100 Ross Avenue, Suite 2700, Dallas, Texas 75201, (214) 981-3800 (phone); (214) 981-3839 (fax) |

3. **Jury Demand:**

   Was a Jury Demand made in State Court?   X• Yes   • No

   If "*Yes*," by which party and on what date?

   | Buxton Company, Plaintiff | 8/22/12 |
   |---|---|
   | Party | Date |

Supplemental Civil Cover Sheet
Page 2

4. **Answer:**

   Was an Answer made in State Court?   • Yes   X• No

   If "*Yes*," by which party and on what date?

   _____                    _____
   Party                                                Date

5. **Unserved Parties:**

   The following parties have not been served at the time this case was removed:

   **Party**                                            **Reason(s) for No Service**

6. **Nonsuited, Dismissed or Terminated Parties:**

   Please indicate any changes from the style on the State Court papers and the reason for that change:

   **Party**                                            **Reason**

7. **Claims of the Parties:**

   The filing party submits the following summary of the remaining claims of each party in this litigation:

   **Party**                                            **Claim(s)**
   Buxton Company, Plaintiff                            Claims for breach of contract, promissory estoppel,
                                                        tortious interference, fraud, and negligent misrepresentation.